UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SSP AMERICA, INC.<br><br>       Plaintiff,<br><br>v.<br><br>SEAGIS JFK LLC,<br><br>       Defendant. | Case No. 1:21-cv-00475<br><br>ECF Case<br><br>**COMPLAINT** |

  SSP America, Inc. brings this complaint against Seagis JFK LLC for fraud and breach of a commercial/industrial lease, seeking equitable relief and money damages, and for its complaint states as follows.

## PARTIES AND JURISDICTION

  1. SSP America, Inc. ("SSP") is a corporation organized and existing under California law. SSP is the U.S. division of SSP Group, a global food travel provider. SSP is one of the nation's leading food and beverage concessionaires at airports across America.

  2. SSP's principal place of business is at 20408 Bashan Drive, Suite 300, Ashburn, VA 20147.

  3. Seagis JFK LLC ("Seagis") is a limited liability company organized and existing under Delaware law.

  4. Seagis is an affiliate of Seagis Property Group LP.

  5. Seagis Property Group LP owns and operates more than 11.5 million square feet of logistically driven warehouse space in markets in New York (Queens, Brooklyn, and Bronx), New Jersey, and Florida.

  6. Seagis Property Group LP's principal place of business is One Tower Bridge, 100 Front Street, Suite 350, Conshohocken, PA 19428.

7.      Seagis Property Group LP owns a substantial portfolio of warehouse and office buildings around JFK International Airport in Queens, New York, some of which are depicted at www.jfkwarehouse.com (last visited January 27, 2021).

8.      Seagis is the owner of a warehouse located at 165-35 145th Drive, Jamaica, New York, near JFK International Airport.  Seagis acquired the real property and its improvements in November 2016.

9.      Seagis, as landlord, leased to SSP, as tenant, approximately 24,440 rentable square feet within the warehouse at 165-35 145th Drive.

10.     A genuine and complete copy of the parties' Commercial/Industrial Building Lease dated December 5, 2018, as amended by the First Amendment to Lease dated July 15, 2019, is attached to this complaint as Exhibit A.

11.     The parties are of diverse citizenship.

12.     This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between all plaintiffs and all defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject matter of this action is situated in the district.

## **FACTS**

14.     No later than July 2017, Seagis publicly listed the premises for lease as space appropriate for food preparation and storage, advertising the space as offering a hot kitchen, ovens, and refrigeration and freezer facilities.

15.     Before Seagis leased the premises to SSP, the premises were leased to another food service provider.

16. Seagis knew or should have known that the operation of its premises for food preparation and storage requires the premises to be free of health and safety hazards.

17. In the summer of 2018, Seagis and SSP entered into lease negotiations. As a result of their negotiations, Seagis was aware that SSP is in the business of travel food service, that SSP operates food concessions at JFK and LaGuardia Airports, and that SSP intended to use the premises as a commissary to prepare and store food for the JFK and LaGuardia Airport concessions.

18. During the lease negotiations, Seagis promised to make repairs necessary to render the premises suitable for use as a food commissary before delivering possession of the premises.

19. During the lease negotiations, Seagis promised to make repairs to the building and premises during the term of the lease, as necessary, in order to ensure the premises remains suitable for use as a food commissary.

20. SSP signed the lease in reliance on Seagis's representations and promises.

21. In retrospect, it has become obvious that Seagis never intended to make repairs necessary for the premises to be useable as a food commissary.

22. If SSP had known that Seagis had no intention to make the building and premises suitable for use as a food commissary, SSP would never have signed the lease, paid rent, or invested over $2 million of its own funds in the premises.

23. The Commencement Date under the lease is December 1, 2018. Before delivery of possession on that date, section 1.2 of the lease obligates Seagis to make Improvements as defined in the lease and set forth in the scope of work attached as Exhibit B to the lease. Seagis's timely and satisfactory performance of its obligation was essential to render the premises suitable for use as a commissary.

24. Further, throughout the term, the lease obligates Seagis to maintain and make repairs to certain portions of the building or premises. Section 7.1 of the lease requires Seagis to keep "the structure of the Building, including, without limitation, exterior walls, slab and roof of the Building," "in good repair and working order as a prudent owner" at "Landlord's sole cost and expense."

25. Seagis's timely and satisfactory performance of its obligation to maintain and make repairs to the structure of the building, including the roof and slab, was and is essential to render the premises suitable for use as a commissary.

26. Almost immediately after SSP's taking possession, it became apparent that the building has significant structural defects and other problems that Seagis was supposed to, but did not, repair before delivering possession to SSP.

27. Within a month, leaks in the roof became apparent. The leaks rendered the premises unsuitable for food preparation, and mold grew as a result of the roof leaks.

28. The floor slab was discovered to be structurally unsound, cracked, and unable to support the load of the ovens, making the condition of the premises unsuitable for use as a commissary.

29. The elevators functioned improperly, which posed a health and safety hazard, and numerous other problems gradually were revealed.

30. An architectural, structural, and engineering consultant that evaluated the condition of the building and premises in June 2020 concluded that there are numerous, substantial, and material defects in the structure and condition of the building and premises, including electrical, life and safety, fire protection, mechanical, and plumbing deficiencies, some of which are code violations, for which Seagis is responsible.

31. A genuine and complete copy of the consultant's report of the conclusions of its building evaluation is attached to this complaint as <u>Exhibit B</u>.

32. Estimates of the cost to bring the building up to the standard to which Seagis pretended to promise to deliver the premises range from $2 million to $3 million or more.

33. Before SSP became aware of the extent to which the building and premises were defective upon delivery, SSP paid a substantial amount of rent and invested over $2 million to prepare the premises to be operated as a commissary, installing fixtures that have little value if SSP cannot operate the premises as intended.

34. The lease contemplates that SSP would begin to use the premises for its commissary operations on June 1, 2019. SSP remains unable to use the premises because of Seagis's false statement of its intention to deliver them in a suitable condition and to make repairs during the term of the lease.

35. After numerous informal communications and demands to bring the property up to standard by SSP directly or through its legal counsel, SSP gave Seagis formal notice of default under the lease on April 4, 2020.

36. A genuine and complete copy of the April 4, 2020, notice of default is attached to this complaint as <u>Exhibit C</u>.

37. Seagis has been non-responsive to SSP's repeated demands, has not cured its defaults, and continually insists – directly contrary to the lease language – that SSP accepted the building in "as-is" condition.

38. After it became apparent that continued demands would be futile, SSP secured alternate space to operate a temporary commissary to support its food concessions at JFK and LaGuardia Airports and vacated the premises. However, the alternate space is more expensive and less efficient for SSP's commissary operation.

39. The defects in the building and premises are so substantial, and were present (it appears in retrospect) when Seagis delivered possession of the premises, it is inconceivable that Seagis was unaware of the condition of the building and premises when it entered into the lease.

40. The breadth and depth of the defects, the fact that they surfaced soon after SSP took possession, Seagis's non-responsiveness to SSP's demands, and Seagis's insistence that SSP accepted the premises in as-is condition (despite the lease language otherwise) are proof that Seagis knew of the defects but never had any intention of delivering or maintaining the premises in the defect-free condition that Seagis represented to SSP.

## COUNT I

### (Fraud in the Inducement of Contract)

41. The allegations in paragraphs 1 through 40 above are hereby incorporated.

42. During lease negotiations, despite Seagis's representations otherwise, Seagis had no intention of delivering the premises in a condition suitable for operation of a food commissary.

43. Seagis knew that it had no intention of delivering the premises in a condition suitable for operation of a food commissary but nonetheless misled SSP into believing otherwise in order to induce SSP into signing the lease.

44. If SSP had known that Seagis had no intention of delivering the premises in a condition suitable for operation of a food commissary, and no intention of bringing the property to standard during the term of the lease, SSP would not have entered into the lease, paid rent, or made its own investments in the premises.

45. SSP reasonably relied on Seagis's misrepresentations and material omissions of fact, not knowing they were untrue, and entered into the lease.

46. SSP has suffered injury as a result of Seagis's misrepresentations and material omissions of fact.

## COUNT II

### (Breach of Contract)

47. The allegations in paragraphs 1 through 40 above are hereby incorporated.

48. Seagis's failure to deliver the premises in the condition agreed upon in the lease is a breach of the lease and Seagis's lease obligations.

49. Seagis's failure to repair the premises or maintain the premises to standard during the term of the lease is a breach of the lease and Seagis's lease obligations.

50. SSP has suffered injury as a result of Seagis's breach of contract.

## REQUEST FOR RELIEF

WHEREFORE, SSP America, Inc. requests that the Court enter a judgment order in its favor, and against Seagis JFK LLC, as follows:

A. As to Count I, rescinding the lease and compelling Seagis to restore to SSP all monies paid to Seagis, for investment in the premises, or otherwise in reliance on Seagis's misrepresentations or, alternatively, awarding SSP a money judgment for compensatory damages as a result of Seagis's fraud, in excess of $3 million; and

B. As to Count I, awarding SSP punitive damages; and

C. As to Count II, awarding SSP a money judgment for compensatory damages as a result of Seagis's breach of contract, in excess of $3 million; and

D. As to both counts, awarding SSP its reasonable attorneys' fees, costs, and prejudgment interest.

Date: January 28, 2021 **VENABLE LLP**

   /s/ Michael M. Agosta
Michael M. Agosta
1290 Avenue of the Americas, 20th Floor
New York, NY 10104
(212) 503-0690
(212) 307-5598 (fax)
mmagosta@venable.com

Caroline Petro Gately
(to be admitted *pro hac vice*)
600 Massachusetts Avenue, N.W.
Washington, DC 20001
(202) 344-4744 phone
(202) 344-8300 fax
cpgately@venable.com

*Counsel for SSP America, Inc.*